Case number 22-5243. Jacqueline Brené N'jai at balance versus United States Department of Education et al. Ms. Fine, I make this query at balance. Ms. Massir, for the appellees. Morning, counsel. Morning. Thank you, Chief Judge. May it please the court. I'm Thomas Birch, appointed by the court as anchor on behalf of Ms. Jacqueline N'jai. I have three students who helped me prepare the case. Rob Wedge, Hope Garrison, and Allison Fine. Today, Ms. Fine will be handling the argument, and I'll be sitting at counsel table. Thank you, your honors. Thank you. Good morning, Ms. Fine. Please proceed when you're ready. Thank you, your honors, and may it please the court. My name is Allison Fine, and I, Robert Wedge, and Ms. Hope Garrison, have been appointed on behalf of the appellant, Ms. N'jai. We were asked to address whether the government contacts exception to the D.C. long-arm statute is limited to First Amendment activities. This court should find in the affirmative for three reasons. First, the text, scope, and history of the D.C. long-arm statute support this interpretation. Second, since the D.C. Court of Appeals and Rose versus Silver, that court has repeatedly reaffirmed that the only principled justification for the exception is the First Amendment. And third, the D.C. Court of Appeals has recognized that other due process or policy concerns associated with the exception can be addressed through other means. The original government contacts exception did have both a due process and a First Amendment justification to it, but that's because it was derived from the D.C. service of process statute, and the exception at issue here comes from the D.C. long-arm statute. And in environmental research versus Lockwood Green Engineers, the D.C. Court of Appeals recognized that the long-arm statute still, there was still a government contacts exception under the long-arm statute because that statute was designed to be similar in scope to those of Maryland or Virginia whose state's long-arm statutes can reach to the fullest extent that process allows, meaning that the D.C. statute can also reach to the farthest extent that due process allows. And in footnote 11 of Lockwood, the court also noted that in enacting the long-arm statute, Congress did not mean to eliminate the government contacts exception because doing so would impermissibly burden individuals' ability to exercise their First Amendment rights to petition the government for a redress of grievances. But it wasn't until Rose versus two years later that the court had to quote, come to grips with the question that the Lockwood court didn't have to answer. That is what is the justification for the exception? And in Rose, the court said, because the long-arm statute is coextensive with due process, the only remaining justification for the exception is the First Amendment. So Ms. Fine, assume for the moment that I agree with everything you just said. Why? My question is whether we nevertheless should be certifying this question to the D.C. Court of Appeals because that court, in its most recent statement on this issue, said that this exact question is genuinely uncertain. We've sent conflicting messages, and this is the Browder case, which I know then doesn't resolve it. Wouldn't it be a bit odd for us to now say the D.C. law is clear? Yes, Your Honor. Certification, given the history on this issue, might be proper, but it is not necessary here because although the Court of Appeals might have identified that there is some confusion, especially among the lower courts, about how this applies, the D.C. Court of Appeals has been very consistent in how it applies. We can look at Rose, which was then followed by Lex-Tex, where the court said that in Rose, it had in essence said the First Amendment is the only justification. And then in Compania versus Applied Industrial Materials, in a certified question from this court, the D.C. Court of Appeals said that Rose and Lex-Tex had narrowed the scope of the exception. It cited Rose and Lex-Tex in that case. And then Compania carved out an exception to the government contacts principle based on fraud because fraud is not protected under the First Amendment. So doing so would undermine the First Amendment principles of the exception. And the court... Our court has sent, not this exact issue, but our court has sent this complex of issues back to the D.C. courts a few times because we've also said that the scope of the contacts exception is unclear after the lineage of cases that you described. So has something happened in the interim since we did that that would cause us to do something differently now? The reason you don't need to certify is that when you look at the totality of the case law and how it has built on each other repeatedly over the years with Lockwood identifying that the exception couldn't be eliminated under the long-arm statute because it would impede individuals' First Amendment rights with Rose finding that the exception is rooted in First Amendment. Lex-Tex reiterating that with Compania then finding the same. And even in the Browder case, Your Honor cited that the policy concerns associated with the exception, such as maybe D.C. becoming a national judicial forum, we don't need to be concerned about that because, first, due process is a constitutional requirement. We don't need the exception to do that work. It's required in every case, not to mention the long-arm statute reaches that scope. And then policies that exist already like forum nonconvenience or transfer can resolve that. So when you look at all of those cases together, Your Honor, that really answers the question. It shows that the justification to the exception, though there might have been language in prior cases that indicates, of course, there was uncertainty in how lower courts were applying it, that the overall principle has been very consistently applied throughout the years. So the primary question we've been talking about is whether this exception is just First Amendment activities. Do you think it's clear that the university's contacts with DOE here are not First Amendment activities? Yes, Your Honor. You could look to the case of Beachford versus the trustees of the University of Columbia, where the D.C. Court of Appeals said that in that case, the only business that Columbia was transacting in the district was soliciting federal grants or obtaining federal loans. And that was precisely what was happening here. Ms. Njai's underlying claims are central to the contact happening in the district. And every harm that she has alleged, the nexus is the district. The universities are obtaining federal loans from the district that they are then handing out to students to further their business as a for-profit institution. Ms. Njai has alleged that the universities have fraudulently taken out loans in her name and then certified her to the Department of Education for collections through the Treasury Offset Program on those loans. So all of those central contacts are happening through D.C. And that Beachford case identifies that that falls under the transacting business aspect of the long-arm statute, and that would not be First Amendment activity because in Lex Tax footnote 9, the court noted that First Amendment activities were at a minimum petitioning for a redress of grievances. If we were to ask what allegations satisfy the relatedness aspect of the due process inquiry, I assume your answer would basically be the same list of things you just said. Yes, Your Honor. And if I may reserve the remainder of my time for rebuttal, unless you have remaining questions. I have one question. We will give you time for rebuttal. So do you understand there to be any dispute among the parties on whether the activities that are relevant are First Amendment activities? I would expect that opposing counsel may argue that this is First Amendment activities, Your Honor, because there are some district court opinions that might suggest that. However, that Beachford case that I mentioned says the opposite and is a D.C. Court of Appeals decision. But do you understand there to be any dispute in the briefing before us on the issue? Yes, Your Honor. You do? You think there is? I didn't see it, but we can ask the other. We can ask the other side about that. But I was just wondering about your impression. Sorry, are you asking if there's dispute whether among the parties whether this is First Amendment activity? Yeah, with respect to in the way that it's been presented to us for purposes. No, sorry, Your Honor. Okay. All right. Thank you. We'll give you some time for let me make sure my colleagues don't have. Oh, sorry. Okay. Thank you. Thank you. We'll give you some time for rebuttal. Thank you. Miss Maseer, please proceed when you're ready. Uh, good morning, Your Honors. May it please the court. My name is Deborah Maseer, and I represent the defendant at Police New York University and Long Island University. Your Honors, you've asked for briefing on the question of whether the government contacts exception applies to personal jurisdiction under existing District of Columbia law and whether it's limited to activities under the district's controlling precedent of Lockwood. Lockwood was en banc and under D. C. Law panel decision cannot issue a panel, cannot issue an opinion that conflicts with en banc decisions. And here I'm thinking of the of the case M. A. P, which was cited to by esteemed counsel in the amicus brief. And I'm thinking of the opinion by Justice Gallagher in which he talked about why in rose they did not take up the case on bonk. Uh, Your Honors, if I may respectfully offer a clarification of the language in our brief, we apologize. We confusingly refer to Lockwood as the controlling precedent of this court. Well, of course, it is the controlling precedent of the District of Columbia's Court of Appeals. We should have been more precise in our in our language. Turning back to the argument, Lockwood is premised on the sound public policy that there is a need for unfettered access to federal departments and agencies by our national citizenry without the chilling effect of having to defend themselves in court in the District of Columbia is a very unique, uh, if you will, uh, it has a unique character. Um, before the 1970s, uh, there was municipal codes relating to the District of Columbia's, uh, court system that were then amended. Um, Lockwood is important. It was issued in 1976, uh, to prevent the district from becoming a national judicial forum with jurisdiction over nonresidents whose contact with the district was merely interacting with federal agencies and federal instrumentalities. Your Honors, respectfully, in this case, for example, millions of Americans have student loans, old student loans. And are we now to say that those individuals could come into D. C. into the District of Columbia and litigate, uh, whether or not they were properly paid or not, uh, not only would it clog the system, it offends basic principles of minimum context that our, our court system is built upon. So is your view then that where this court has expressed concern about the reach of the exception, the government contacts exception, either the factual or procedural circumstances have been so distinguishable from both the D. C. Court of Appeals in-bank decision and what it was dealing with there and this case? Uh, Your Honor, uh, thank you for the question. We do not feel that this case, the case at bar, uh, is distinguishable, uh, in terms of the principles of jurisdiction from the Lockwood case. And, and really, we believe that the D. C. Court of Appeals should be the ones to, if you will, change their, change their, uh, you know, their views on, uh, how extensive their jurisdiction should be. Uh, and, and they've been on bonk. They've had the opportunity to revise it with Rose and the other cases cited to by amicus, and they've not taken up the opportunity. Uh, in the Rose case, Justice Gallagher on the D. C. Court of Appeals said clearly he's only a judge. Oh, judge. I'm sorry, Judge. Um, Judge Gallagher, uh, said that, um, he said that he, uh, it would be, he said that it's very clear that a hearing panel cannot overturn or cabin to use the phrase of amicus, uh, an on bonk decision of the D. C. Court of Appeals. He said that very, very clear, and he said that was the reason why he didn't feel the need to have rehearing on bonk on, on Rose. And then, of course, he had decisions by other judges who said that we think it should be rehearing because this decision may, may seem to conflict with Lockwood. And they, again, reiterated the very sound public policy objectives of Lockwood. Can I ask, uh, for, for Rose, if, if we thought that Rose cabin, the scope of the exception to First Amendment activity, just in that I know you would resist it, but just assume that for present purposes. Yes, sir. Then I didn't see anywhere in your brief where you argued that the contact exception would still apply because the activity issue here is First Amendment active. Your Honor about that. Your Honor, if we got to that point, I think we would argue that from our perspective, we were at such an initial phase in this case. You know, I had a motion to dismiss before Judge Friedrich in the district court. There's been no fact development here. Um, the facts are, are, you know, to be determined. If you will, we're right at that initial phase of jurisdiction to respectfully for us when we looked at Lockwood, it was so clear that, uh, there's no question that, you know, that the jurisdiction, you know, doesn't fall here. Um, but certainly if you, if you thought that we would respectfully request the ability to brief that in supplement to if you would allow that. And what's what's wrong with certifying certifying to the District of Columbia Court of Appeals? Certainly that is an avenue. Your Honor. Um, I don't think a dispute. I don't think that there is such confusion that it should be certified. I think that Judge Gallagher and the other judges in the Rose decision made it extremely clear that Lockwood still controls. And, uh, I think that if there was a decision, perhaps by a court that came out right and said, Lockwood is bad. Uh, you know, the reasoning behind it is bad and directly challenged it. Then there might be something there. But as the D. C. Court of Appeals has said, a panel decision simply can't go there. They have had the opportunity. You have a response to the lex text case, because my read of that was that it explicitly applies this exception as limited to First Amendment activities applies it in that fashion. Yes, your honor. I understand the language of flex text and some of the other cases cited to by amicus. Again, I have to go back and I don't want to be too repetitive. I have to go back to that decision with the denial of rehearing, and they they said explicitly it's the law of our District of Columbia Court that a panel cannot overturn or modify or change a decision of a of a panel of a rehearing of a court sitting on Bonk. And, uh, the solution to that is to go back on Bank. I don't know how it would work if this court were to say the District of Columbia should sit on on it. I think that's probably for them to decide. But well, what my question was trying to get at is given the longstanding view of the D. C. Court of Appeals and its opportunities. Is there something about this case that might cause that court to decide to sit in Bank? Either, um, ab initio or after a further statement by a three judge panel? Um, and the D. C. Court of Appeals doesn't sit in Bank that often, uh, at least historically. Um, and so what is it about this case that gets over the hump? And of course, judges change, and maybe that court would leap at the opportunity to reconsider. But the arguments that are presented here, at least so far, leave me some doubt. And now that you raised the point about the factual development here has yet to occur. What do you think would happen were the matter to get to the D. C. Court of Appeals, regardless of whether it went to a three judge panel or an ab initio in Bank proceeding? Your Honor, um, of course, any decision by this court would be entitled to great deference and respect by the D. C. Court of Appeals, I would think. No, I'm trying to focus on, and I may be not clear, is who's going to develop the facts? In other words, is there something about this case absent factual development? Um, that would make it a good subject for referral. But if I'm on the D. C. Court of Appeals and I get this case and I have no facts, uh, that have been found, um, and certainly on a motion to dismiss at this point, I can take allegations as true, but that's a lot of work for that court to do where it's dealing with allegations only. I'm just raising questions. I'm not suggesting where I come out, but there are concerns that I had in considering some of the art. Yes, Your Honor. Your Honor's may be able to respond. I think my time has expired. Your Honor, uh, I agree. Uh, there has the facts as we know it in this in this case that are undisputed are that at well, they may. There may again. There's been no fact development. Miss, uh, the plaintiff appellant alleges that she attended a college in the state of New York in the village of Brookhaven and Manhattan on the period of time from, I believe, 1986 to 1989. Uh, zoom. I believe she was a resident of the state of New York at that time when the plaintiff appellant filed the suit. She was a resident of Pennsylvania. Uh, I believe now she may be a resident of Maryland. Uh, the way the student loan program works is that there's a program. It is administered by a federal agency that happens to have a portion of its workforce situated in the district of Columbia. But the Department of Education doesn't itself give a federal dollars. It simply administers a program and the dollars are given out by third party private lenders. They are given out according to terms agreed to and developed by the Department of Education pursuant to various federal statutes. Those monies are then given out by these, uh, by these third party banks, if you will. Um, and they are then given to the students to attend the colleges. What I see in this case is the Department of Education. Um, you know, they're out of the case. Uh, the two universities are here. There's simply there's simply not the minimum contacts here. Uh, you know, respectfully, the plaintiff went to school in New York. Schools are in New York. Um, it's it's quite unfair to ask entities that do nothing more than accept dollars from a third party bank operating within the parameters of a federal loan program to then defend themselves in in in court in the district of Columbia. And the universities are not the ones who actually hired the credit agencies to go after, uh, for lack of a better word, uh, the plaintiff appellant that would have been done through the Department of Education. So my clients were kind of put in that position, which I believe you would find a lot of entities of they have a very, uh, distant, um, and touching relationship with the district because of the use of that federal program. And now, all of a sudden, they have to defend themselves, uh, in the district of Columbia. And it's not just student loans, respectfully, your honors. It would be, you know, think of all the different federal programs we have. We have Social Security. We have Medicare. We have Medicaid dollars are sent to the states, but they come from the federal government. That's just touches on on some of the ways that people, entities and people who have nothing to do with the district, uh, could be drawn in. I don't know if the district of Columbia wants to clog its courts. Um, I think this would be a case, even if the facts were developed, where the district of Columbia probably would reaffirm their holding in Lockwood and say this is certainly not a case, uh, where we want to think about opening up our jurisdiction. Respectfully, honors, if I may have one minute to conclude unless there are other questions from the panel, make sure there's no further questions. You can give a brief concluding statement. Oh, thank you very much. Um, your honors, I've touched on a few of these things. Um, I just wanted to talk a little bit about, uh, amicus is contention that a large docket in the district of Columbia or a clogged docket that might result from an expansion of through transfer or forms nonconvenience. Uh, respectfully, jurisdiction is mandatory. Uh, that gets rid of the case right off the bat form. Nonconvenience can require a hearing. It's permissive, and, uh, it would require people being brought in the district to hire counsel on the district. I'm actually arguing this case on behalf of my firm because I'm the only one admitted in the district of Columbia in your court in the D. C. Circuit Court of Appeals. And, um, so you would have to hire counsel here. It's extraordinarily expensive and time consuming, and I think we've got I think we've got the relationship between methods form, not convenience and jurisdiction. Yes. Um, let me make sure my colleagues don't have additional questions for you at this time. And if there's not, we'll take your argument under submission. We appreciate it. Thank you very much, Thank you for allowing us to present our arguments. And if I may be allowed to also congratulate the law students have done an amazing job. Thank you. Thank you. It's fine. We'll give you the three minutes you asked for for rebuttal. Thank you, Your Honors. Your Honors, the D. C. Court of Appeals has recognized that these policy concerns have already been handled by the exception because due process requires that an order and under the long arm statute in order to bring a claim in the district, it still has to arise from transacting business in the district. So Appley's argument that this would subject basically every university or anyone accepting federal funds of any type to bringing claims in D. C. Or the suit in D. C. Is is misplaced because those arguments or those those claims still have to arise from transacting business. It can't just be, uh, that you see federal money, and that was it here. Miss Najai's claims directly relate to the business that the universities are transacting in the business. Her underlying claims directly pertain to the district. It's not like some of the district court cases such as Stevens or Morgan's that Appley cite in their brief where the actual underlying claims occurred outside of the district. Additionally, Lockwood and Rose are not inconsistent with one another. Both cases can still stand true today. They addressed different questions. In Lockwood, the D. C. Court of Appeals identified that the government contacts exception still exists under the long arm statute. In Rose, the court said it had to quote come to grips with the question Lockwood didn't have to address, meaning what is the justification for the exception? Additionally, a Lockwood case was the jurisdiction there was improper because it violated due process. And the only two contacts in D. C. In that case were direct First Amendment government contacts in the district. So we can't look at Lockwood as saying it said the exception was based on due process, or it said the exception was speaking on the First Amendment or even both because that court was limited to looking at the facts that it had before it. And the facts that had before was that there were direct First Amendment government contacts. Additionally, the denial of rehearing on Bonk really cuts in favor of of the position that the two cases aren't inconsistent, your honors, because, as noted in the concurring opinion, the cases if they were inconsistent, the judges would have to rehear them. And the Rose court specifically stated in the first paragraph of its opinion. Rose and Lockwood are materially different cases, so they don't conflict with one another, which was also reiterated in that decision. And lastly, just on the note of the First Amendment scope here, the First Amendment protections associated with D. C. are at a minimum, as the court Lex text noted in footnote nine to allow individuals to petition the government for a redress of grievances. It indicated that maybe that's broader, but that's all that the government context exception exists to allow individuals to do. And for these reasons, we respectfully ask that this court find that the government context exception is grounded in First Amendment principles. Thank you. Thank you, Miss Fine. Thank you. Thank you to both of you. We'll take this case under submission. Miss Fine, you and your team are appointed by the court to support the appellant in this matter. We thank you for your able assistance.
judges: Srinivasan, Garcia, Rogers